**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 26-12108

Non-Argument Calendar

————————————

WILLIAM MENDOZA BERG,

*Petitioner-Appellee,*

*versus*

SOCORRO DEL CARMEN POLANCO SANDOVAL,

*Respondent-Appellant.*

————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:26-cv-00711-PGB-NWH

————————————

Before BRANCH, LUCK, and BRASHER, Circuit Judges.

PER CURIAM:

This appeal arises under the Hague Convention on the Civil Aspects of International Child Abduction, as implemented by the

International Child Abduction Remedies Act, and concerns a parental custody dispute over minor child M.P.B. *See* 22 U.S.C. §§ 9001–9011. Socorro Del Carmen Polanco Sandoval, M.P.B.'s mother, appeals the district court's order granting relief to William Mendoza Berg, M.P.B.'s father, and directing that M.P.B. be returned to the Kingdom of Norway. After careful review, we affirm.

**I.**

The parties are familiar with the facts in this appeal, and we recount them only as necessary to explain our decision.

M.P.B. is the second child of William Mendoza Berg and Socorro Del Carmen Polanco Sandoval, who were married and, until recently, both resided in the Kingdom of Norway. M.P.B. and his older brother have both been diagnosed with Childhood Autism. Berg and Sandoval separated in 2019 and divorced in 2020. They initially agreed on joint parental responsibility. In 2022, with Berg's consent, Sandoval temporarily traveled with M.P.B. and his brother to the United States. Berg granted Sandoval sole parental responsibility, and from then on, M.P.B. and his brother permanently resided with Sandoval. By the following year, Sandoval was planning to move permanently to Florida with M.P.B. and his older brother, but Berg opposed the move. Sandoval denied Berg contact with M.P.B. after that.

Berg filed a report of concern to Norway's child welfare service, and both parents petitioned for sole parental responsibility. The Vestfold District Court determined that the parents should have joint parental responsibility and that Sandoval could not

move abroad with M.P.B. without Berg's consent. The court also ruled that M.P.B. would continue to reside with Sandoval, but that Berg would have regular visitation. When discussing why joint parental responsibility was best for M.P.B., the court explained that Berg stated that he had relinquished parental responsibility in 2022 only to help Sandoval obtain favorable disability benefits, and that Berg did not realize that Sandoval requested sole parental responsibility so that she could move the children to the United States. The court further explained that Berg had exercised parental responsibility in the past and that Sandoval had withheld visitation rights from Berg.

Berg filed a claim for enforcement of the visitation judgment by coercive fine in the Vestfold District Court. Sandoval responded that she had traveled with M.P.B. to the Dominican Republic but highlighted that Berg could visit M.P.B. on holidays. Berg replied that he had not been aware that Sandoval had taken M.P.B. to the Dominican Republic. He told the Norwegian court that he had filed an application for return from the Dominican Republic under the Hague Convention. The Vestfold District Court ordered that over the next year, Sandoval would pay a fine each time she failed to allow visitation between Berg and M.P.B. The decision was appealed to the Agder Court of Appeal, which dismissed the appeal "after assessing the parties' conflicting statements in light of the other information in the case," and finding that it was "clearly unlikely that the father consented to the children moving to the Dominican Republic." Dkt. 12 at 146.

Berg later petitioned for an interim decision from a Norwegian court, requesting sole parental responsibility and permanent residence with M.P.B. The Vestfold District Court found that Sandoval's relocation of M.P.B. breached the earlier judgment and called it "highly problematic" because the relocation prevented Berg from having ordinary contact with M.P.B. Dkt. 12 at 152. The court called the relocation criminally unlawful and said, "she has a duty to bring [M.P.B.] back to Norway." *Id.* But the court ultimately declined to award sole parental responsibility to Berg. In November 2025, the Norwegian Vestfold District Court entered a temporary ruling declining to force M.P.B. to relocate and providing that Berg could have remote visitation access to M.P.B. pending a full custody trial in August 2026.

Sandoval is living with M.P.B. and his older brother in the United States. She states that she is married to a new spouse, is in the process of divorcing him, and has filed a petition for Violence Against Women Act Adjustment of Status related to her current spouse's acts of domestic violence. 8 U.S.C. § 1255.

Berg filed a Petition for Return of Minor Child M.P.B. in United States federal district court. The district court conducted a full evidentiary hearing at which both parties were represented by counsel and presented evidence. Sandoval attempted to present a clinical evaluation addressing the harm repatriation would cause M.P.B., but on Berg's hearsay objection, the district court excluded the report. Sandoval also filed a copy of M.P.B.'s Individualized Education Plan from his school in Florida, as well as an email stating

that M.P.B. had been awarded a Family Empowerment Scholarship for Students with Special Needs.

The district court granted Berg's petition. The district court explained that Berg had proved a prima facie case of wrongful retention under the Hague Convention: (1) M.P.B. habitually resided in Norway, (2) Berg had repeatedly exercised his parental rights by petitioning to enforce his visitation rights and secure sole parental responsibility, and (3) credible evidence established that Berg never consented to Sandoval's decision to move M.P.B. to the United States. The court rejected the affirmative defense of consent or acquiescence under Article 13(a), explaining that Sandoval's testimony that Berg consented to her removal decision was unreliable given Berg's efforts to secure joint parental responsibility. The court rejected the well-settled defense under Article 12, explaining that even though M.P.B. appeared to have settled into life in the United States (despite the fact that her income was only $1,800 per month), a parent who chooses to violate the non-custodial parent's rights by moving away without consent cannot benefit from this defense. Finally, the court rejected the grave risk of harm defense under Article 13(b), explaining that the Kingdom of Norway provides comprehensive support to children with special needs. The district court rejected Sandoval's argument that Berg was an absent parent because he had not been in contact with M.P.B., finding Berg's testimony credible that he had stopped FaceTiming with M.P.B. because M.P.B. would become too upset. The district court also placed "little weight" on the statements of M.P.B.'s older brother that Berg is "mean" to M.P.B. because those statements

contradicted the Vestfold District Court's commentary that Berg had enjoyed a close relationship with M.P.B. prior to his relocation. Doc. 30 at 12.

Sandoval filed four successive post-judgment emergency motions seeking stays and reconsideration, and the district court entered an omnibus order denying all four motions. The court explained that none of Sandoval's filings constituted a true emergency and that all arguments she raised had either been considered and rejected or should have been raised earlier.

Sandoval appealed. We designated this appeal as expedited.

## II.

We review the district court's factual findings for clear error and its legal conclusions *de novo*. *Baran v. Beaty*, 526 F.3d 1340, 1344 (11th Cir. 2008). "Whether a grave risk of harm to a child exists under the terms of the Hague Convention is a mixed question of law and fact, which we review *de novo*." *Id*. at 1345. We review for abuse of discretion a district court's decision to admit or exclude evidence. *United States v. Frazier*, 387 F.3d 1244, 1258 (11th Cir. 2004).

## III.

Sandoval argues that the district court erred in five ways. First, by disregarding a clinical evaluation about M.P.B.'s vulnerability to harm from repatriation. Second, by making a contradictory credibility finding about the reason Berg stopped his FaceTime calls with M.P.B. Third, by failing to find a grave risk of harm.

Fourth, by violating international comity and disregarding the Vestfold District Court's interim order. And fifth, by ignoring evidence that Berg consented to M.P.B.'s removal.

After careful review, we conclude that each argument is meritless.

First, Sandoval mischaracterizes the district court's treatment of hearsay testimony by arguing that the clinical evaluation report should have been evaluated as expert evidence. Sandoval argues that the district court violated Federal Rule of Evidence 702 and the *Daubert* standard when it directed her to obtain a clinical evaluation addressing the harm repatriation would cause M.P.B. and then disregarding that evaluation without conducting a *Daubert* analysis. She adds that doing so violated the Due Process Clause and the Equal Protection Clause, citing *Mathews v. Eldridge*, 424 U.S. 319 (1976). Berg responds that the district court was never asked to conduct a *Daubert* analysis. Instead, the court properly excluded the evaluation produced by an absent witness as hearsay.

We agree with Berg that the clinical evaluation was properly excluded as hearsay. An out-of-court statement offered for its truth is hearsay, FED. R. EVID. 801, so a written report offered for its truth and produced by an expert who is not testifying in court is hearsay. Sandoval did not argue that the report fell within any hearsay exception, nor does she identify any exceptions on appeal, nor does she contest that hearsay is inadmissible in proceedings like this one. Moreover, because Sandoval did not present the psychologist who conducted the evaluation as an expert witness, she never triggered

the *Daubert* standard for expert testimony. *See Quiet Technology DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003) (explaining that a district judge must conduct a *Daubert* inquiry *if* faced with a proffer of expert scientific evidence). We therefore reject this ground for appeal.

Second, Sandoval has not established that the district court's credibility determination was clearly erroneous when it determined that Berg stopped FaceTiming with M.P.B. out of parental concern rather than neglect. Sandoval argues that the district court clearly erred when it credited Berg's unsubstantiated claim that he stopped FaceTime calls with M.P.B. because M.P.B. would become agitated. She asserts that the district court must have observed at a status hearing that M.P.B. did not recognize Berg, and that this observation is consistent with the conclusion that Berg is an absent father. Berg responds that the district court's decision to credit his account is a credibility determination that a factfinder is free to make. Berg adds that there is no record of what Sandoval alleges the court saw.

We agree with Berg. "Findings of fact . . . must not be set aside unless clearly erroneous, and the reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility." FED. R. CIV. P. 52(a)(6). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985). The district court was free to credit Berg's tes-

timony that he stopped FaceTime calls out of parental concern because this testimony is a permissible view of the evidence. That testimony is also consistent with Sandoval's assertion that the court observed M.P.B. failing to recognize Berg because Berg ending his FaceTime calls could lead M.P.B. to no longer recognize him. We will not set aside as clearly erroneous the district court's credibility determination.

Third, Sandoval has not carried her burden of establishing by clear and convincing evidence the grave risk affirmative defense under Article 13(b) of the Convention. 22 U.S.C. § 9003(e)(2)(A). The grave risk affirmative defense provides that a court may deny a petition to relocate if the person opposing it can show evidence that relocation would pose a grave risk of harm to a child's physical or psychological wellbeing. *See* 22 U.S.C. § 9003(e)(2)(A) (cross-referencing the exception in article 13b of the Convention); Convention, art. 13(b); *see also Baran*, 526 F.3d at 1345. Sandoval argues that the district court erred in its grave risk evaluation by evaluating M.P.B. under a neurotypical standard, ordering repatriation that would deprive him of the legally protected therapy in his Individualized Education Plan and his Family Empowerment Scholarship, ignoring evidence that the relationship between Berg and Sandoval was unsafe for M.P.B.'s older brother, ignoring that repatriation would separate M.P.B. from his older brother, and ignoring the family's immigration protections under a pending Violence Against Women Act Adjustment of Status petition. *See* 8 U.S.C. § 1255. Berg responds that the district court extensively considered M.P.B.'s autism diagnosis and concluded that Norway provides

comprehensive support for special needs children. Berg adds that the district court considered and rejected Sandoval's argument about the testimony of M.P.B.'s older brother because the court discounted its credibility. Berg also rebuts the argument regarding the IEP and the scholarship, explaining that none of this evidence was presented at the evidentiary hearing and that Article 13(b) was never meant to cover the loss of some educational opportunities.

We reject this ground for appeal. The "grave risk" affirmative defense is "to be construed narrowly." *Gomez v. Fuenmayor*, 812 F.3d 1005, 1011 (11th Cir. 2016). Sandoval has presented no evidence that the district court clearly erred in its factual findings that Norway provides comprehensive support for special needs children. And "[a]lthough all returns will necessarily involve some level of disruption to the child or children involved, we caution that disruption should not be considered *per se* detrimental." *Fernandez v. Bailey*, 909 F.3d 353, 361 (11th Cir. 2018). Sandoval's IEP and scholarship argument does not meet the high bar of proving a grave risk because the presence of an IEP or a scholarship merely documents what accommodations would be available to M.P.B. in Florida—not what Norway could offer. *See Baran*, 526 F.3d at 1346 (explaining that some federal courts require respondents to present evidence that the country of return is not equipped to protect the child). The district court also did not clearly err when it rejected Sandoval's argument about physical abuse of M.P.B.'s older brother because discounting this testimony was a permissible view of the evidence. *See Anderson*, 470 U.S. at 574. Sandoval did not present evidence about the risk of severing M.P.B.'s relationship with

his older brother at the evidentiary hearing, so she waived this argument. *See Ramirez v. Sec'y, U.S. Dep't of Transp.*, 686 F.3d 1239, 1249 (11th Cir. 2012). Sandoval has similarly waived her argument about her VAWA petition by not presenting it at the evidentiary hearing, *see id.*, and even if she had not, this argument is about Sandoval's immigration status, rather than any risk related to M.P.B.'s repatriation.

Fourth, the district court's order did not violate international comity. Sandoval argues that the district court violated international comity by ignoring the November 2025 temporary custody verdict of the Vestfold District Court, which declined to force M.P.B. to relocate and provided that Berg will have remote visitation access until the August 2026 custody trial. Berg responds that the district court's order did not contradict anything in the Vestfold District Court's order, which was a temporary custody determination. Berg emphasizes that the district court's return order actually facilitates international comity by returning M.P.B. to Norway so the parties can fully participate in the August 2026 custody trial. We agree with Berg. A court exercising jurisdiction under ICARA does not determine child custody claims; it determines claims under the Hague Convention. 22 U.S.C. § 9001(b)(4). Because the November 2025 Vestfold ruling was a custody determination, the district court's return order does not violate international comity.

Fifth, the district court did not clearly err by finding that Berg did not consent to M.P.B. moving to the United States. Sand-

oval argues that this finding was clear error because it ignored evidence of Berg's consent and his financial abandonment of the family. She has filed WhatsApp communications that she asserts are properly authenticated under Federal Rule of Evidence 901(b)(4) and prove that on the date of M.P.B.'s departure, Berg knew about the flight and even facilitated M.P.B.'s travel. She also asserts that she confronted Berg about his child support debt and that she cancelled some of that debt in exchange for Berg consenting to M.P.B.'s relocation. Finally, Sandoval argues that the district court committed clear error in calculating her income as $1,800 per month even though it exceeds $3,300 per month. Berg responds that Sandoval is asking us to reweigh credibility findings, which is what the clear error standard forecloses. Berg adds that the WhatsApp messages were not proffered at the evidentiary hearing, but that even if we considered them, logistical assistance with a visit does not constitute consent to permanent relocation. Berg adds that the Norwegian Agder Court of Appeal affirmed an order enforcing Berg's visitation rights by coercive fine, finding that it was "clearly unlikely" that Berg had consented to M.P.B.'s relocation. Berg's Br. at 36 (quoting Dkt. 12 at 146).

We agree with Berg. There is no record evidence of Berg consenting to M.P.B.'s permanent relocation to the United States. And Berg had just won joint parental responsibility before the relocation, which the district court explained made it "def[y] common sense" that he would relinquish that right by consenting to his son's relocation. Doc. 30 at 8–9. Finding Sandoval's testimony about Berg's consent not credible was a permissible view of this

26-12108                Opinion of the Court                13

evidence, so the court did not clearly err by making this credibility determination. *Anderson*, 470 U.S. at 574. Moreover, we will not consider evidence like the WhatsApp messages that were not part of the record below.[1] *See Selman v. Cobb Cnty. Sch. Dist.*, 449 F.3d 1320, 1332 (11th Cir. 2006). Finally, Sandoval failed to explain how the calculation of her income affected the district court's determination of whether Berg had consented to M.P.B.'s relocation. We therefore reject this ground for appeal.

## IV.

For these reasons, the district court's order is **AFFIRMED**. We also **DENY** any and all pending motions as moot.

---

[1] Although we granted Sandoval's motion to supplement the record on appeal, the WhatsApp messages she provided were from 2024 and she failed to admit those messages during the district court's evidentiary hearing, which took place in 2026. Thus, we decline to consider the evidence in our analysis.